# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND


LIBERTY INSURANCE UNDERWRITERS
INC.,                    Plaintiff,

     v.                                      C.A. No. 011-196-ML

RICHARD A. PACIA; PACIA LAW
ASSOCIATES, LLC; JOSEPH MINDICK;
JASON LONG; DEBORAH MINDICK;
D/B/A D.J. MINDICK AND ASSOCIATES;
FORTUNE ASSOCIATES, RIGP; AND
WILLIAM J. DELANEY, IN HIS CAPACITY
AS PERMANENT RECEIVER OF PITMAN
ASSOCIATES, LLC.,
                    Defendants.


## MEMORANDUM AND ORDER

     Liberty Insurance Underwriters, Inc. ("Liberty") brought this
declaratory judgment action to request a determination whether it
has any defense or indemnity obligations with respect to certain
claims (hereinafter referred to as the "Pitman Claims") asserted
against its insured, Pacia Law Associates, LLC ("Pacia Law"), in
connection with the purchase and development of real property
located at 64-66 Pitman Street (the "Pitman Property").   The
defendants in this declaratory action include (1) Richard A. Pacia
("Pacia"), who owned and operated Pacia Law; (2) D.J. Mindick &
Associates[1] ("D.J. Mindick"), Fortune Associates, RIGP ("Fortune"),

---

[1]
     Named Defendants Joseph Mindick, Jason Long, and Deborah J.
Mindick are doing business as D.J. Mindick & Associates.

Advanced Ventures, LLC ("Advanced"), and Pitman Associates, LLC ("Pitman"), which are, together, the parties who brought the Pitman Claims against Pacia and/or Pacia Law; and (3) William J. Delaney, who serves as receiver for Pitman. The matter before the Court in this case is D.J. Mindick's motion to dismiss the complaint pursuant to Fed. R. Civ.P. 12(b)(6) or, in the alternative, to request that the Court decline jurisdiction over the declaratory action.

## I. Facts[2]

### A. The Policy

On January 25, 2008, Pacia Law submitted an application for renewal of its malpractice insurance policy with Liberty. Complaint ¶ 13, Pltf.'s Ex. 1. In the cover letter, Pacia made reference to a potential claim against Pacia Law, but stated that he did not "think the claim has much merit" and/or that it was likely the claim would be resolved. Id. at 1. In the Claims Supplemental Application Form, Pacia noted that no suit had yet been filed, and that the claimed injury was alleged to have been $150,000. Id. at 4. Pacia's description of the claim states: "Attorney is alleged to have committed negligence in a secured loan

---

[2]
The factual summary is primarily based on information contained in the fourteen exhibits attached to Liberty's complaint, which include correspondence between the parties and various details regarding claims asserted against Pacia and/or Pacia Law in Rhode Island state court.

2

closing transaction.  Claimant[3] foreclosed, sustained a deficiency, and has made a 'claim' for loss."  Id.

On February 7, 2008, Liberty issued to Pacia Law a Lawyers Professional Liability Policy (the "Policy") effective from February 2, 2008 to February 2, 2009.  The Policy, which has a limit of $1 million per occurrence and $2 million in the aggregate, covers only claims first made and reported during the policy period, and which are otherwise covered.  Complaint ¶ 15, Policy Page 1 of 13, Pltf.'s Ex. 2.  Under the Policy, Pacia Law is permitted to cancel the Policy at any time in writing.  Complaint ¶ 16, Rhode Island Amendatory Endorsement ¶ 2, Policy Page 12 of 13.  The Policy requires Liberty to obtain written consent from Pacia Law before settling any claim covered by the terms of the Policy, Complaint ¶ 17, Policy Page 7 of 13.  It also requires Pacia Law's assistance and cooperation in Liberty's investigation, defense, and settlement of any claims for which Pacia Law seeks coverage.  Complaint ¶ 18, Policy Page 8 of 13.  The Policy is subject to cancellation by Liberty in case of "[f]raud or material misrepresentation made by **you** [the insured] or with **your** [the insured's] knowledge in obtaining the policy, continuing the policy or in presenting a **claim** under the policy."  Rhode Island Amendatory Endorsement Page 2 of 3 (bolded in original).  The

---

[3] The potential claimant is not identified.

exclusion provisions of the Policy exempt from coverage any claim arising out of a wrongful act occurring prior to the policy period, if the insured "had a reasonable basis to believe that **you** [the insured] had breached a professional duty, committed a **wrongful act**, violated a disciplinary rule, engaged in professional misconduct or to foresee that a **claim** would be made against **you** [the insured]." Policy Page 5 of 13 (bolded in original.) Finally, the Policy provides that the applicant agrees that "the statements in the application are personal representations" which are deemed material and that the Policy is issued in reliance upon such representations. Policy Page 11 of 13.

    B. Claims against Pacia/Pacia Law

        1. The Pitman Claims

        On March 11, 2008, Pacia provided notice to Liberty of a claim by D.J. Mindick and a potential claim by Fortune and Advanced Ventures, both of which were related to allegations of professional negligence. Complaint ¶ 19, Pltf.'s Ex. 3. In the notice, Pacia explained that he had "conducted a real estate closing" at which Pitman purchased the Pitman Property.[4] D.J. Mindick provided three loans for $625,000, $100,000, and $80,000 to acquire and develop the property; Fortune extended two loans of $75,000 each; and Advanced Ventures invested $200,000 and became a member of Pitman.

---

[4] The notice does not disclose that Pacia also owned a quarter share in Pitman.

4

Pacia further stated that all the loans were made upon representation that the Pitman Property was zoned for, and would be converted into, seven (7) condominium units but that, subsequently, it was established that the building was properly zoned only for five (5) units. Pltf.'s Ex. 3 Page 2. A letter from D.J. Mindick dated March 2, 2008 and attached to the notice states that "no zoning approval was ever requested [sic] or granted by the zoning board for seven residential units." <u>Id.</u> at 3. D.J. Mindick also noted that Pitman was in default of the loan and had filed for court receivership. <u>Id.</u> D.J. Mindick attributed a possible loss to Pacia's negligence and requested that Pacia contact his legal malpractice carrier. <u>Id.</u>

On September 23, 2008, Fortune filed a complaint against Pacia and Pacia Law alleging malpractice in connection with the two real estate loans totaling $150,000 that were secured by mortgages on the Pitman Property. Pltf.'s Ex. 4, Fortune Complaint ¶ 4. Fortune stated that, in extending the loans, it relied on incorrect representations made in a May 12, 2006 letter from Pacia regarding zoning approval. <u>Id.</u> at ¶¶ 6, 7. Fortune also alleged that, by letter dated April 18, 2007, Pacia provided an opinion to Fortune that the Pitman Property was valued at approximately $1,500,000. <u>Id.</u> at ¶ 8.

On February 25, 2009, D.J. Mindick filed a complaint against Pacia Law and Pacia, alleging that it engaged Pacia to represent

D.J. Mindick as lender in a transaction involving the purchase and development of the Pitman Property. D.J. Mindick Complaint ¶ 7-9. D.J. Mindick alleged that Pacia's legal services included researching the Property's zoning classification and that Pacia knew that D.J. Mindick would not extend the loan unless the Property could be converted to seven condominium units. Id. at ¶ 9. According to D.J. Mindick, Pacia informed him on May 17, 2006 that the zoning classification had been confirmed and that seven condominium units could be constructed. Id. at ¶ 10. Based on that representation, D.J. Mindick made three separate loans totaling $843,000 to Pitman for development of the Property. Id. at ¶¶ 11-16. Pitman defaulted on the three loans and was placed into receivership on July 10, 2007 by Dynamic Investments Inc. ("Dynamic"), which held a half share in the Pitman Property. Id. at ¶ 19. Subsequently, it was discovered that use of the Pitman Property for seven condominium units was unlawful.[5] Id. at ¶ 20. On March 18, 2008, the Providence Zoning Board of Review adopted a resolution permitting the Property to be used for five residential units, subject to certain conditions. Id. at ¶ 21. On October 8, 2008, the receiver was ordered by a Rhode Island state court to sell the Property for $500,000, free and clear of all liens. Id.

---

[5]

    According to D.J. Mindick, the Property was located in a R-3
Three Family Zone that permitted only three residential units on
the site but it was subject to a 1962 zoning variance which allowed
four office units and one residential unit. Id. at ¶ 20.

at ¶ 22. In its complaint, D.J. Mindick asserted claims of professional negligence, breach of contract, and negligent misrepresentation against Pacia Law and Pacia.

### 2. The Ciccone Claims

By letter dated January 22, 2009, Pacia informed Liberty that he received notice of a claim from Orlando and Rosemarie Ciccone, "regarding a real estate transaction in which I acted as legal counsel for them some time ago." Pltf.'s Ex. 11. Pacia stated that he had been under the impression that this was a claim under a title policy but that "evidently," this was a "malpractice claim as well." Id.

### 3. The Ramos Claim

On March 31, 2009, Pacia informed Liberty that he had been served as a party defendant by Ronnie C. Ramos ("Ramos"). Pltf.'s Ex. 1-13 at 1, 2. According to the complaint attached to Pacia's notice, Ramos engaged Pacia to provide him with legal representation necessary to complete Ramos' purchase of two real estate parcels. Id. at 4-6. Ramos alleged that Pacia, or someone on his behalf, conducted a title examination only with respect to one parcel. After conducting extensive renovations on the residence located on the other parcel, Ramos learned that this parcel been previously sold in a tax sale and that ownership was claimed by an entity other than the entity which sold both parcels to Ramos. Ramos sought primarily injunctive relief, but also

specifically charged Pacia with negligence in failing to order title searches for both parcels, resulting in economic loss to Ramos. Id. at 9, 10.

        4. Liberty's Responses

        By letter dated April 1, 2009, Liberty informed Pacia's counsel that it was prepared to provide a defense to Pacia Law and Pacia regarding the D.J. Mindick and Fortune claims. However, Liberty reserved its right to disclaim coverage for those claims, in whole or in part, based on referenced provisions in the Policy. Liberty noted that, instead of conducting an independent verification that the Pitman Property was zoned for seven residential units, Pacia relied on representations regarding zoning by Dynamic, which was already part owner of the Property. Pltf.'s Ex. 9 Page 2. Liberty pointed out that "[t]he Policy excludes from coverage claims that result from an insured's professional legal services with respect to an organization in which that insured person owns more than 10% of the outstanding shares" and that Pacia, at all times pertinent to Fortune and D.J. Mindick's claims, "acted as a member of Pitman, the borrower whose default on loans has caused the losses alleged by both claimants." Id. at Page 9. Finally, Liberty reserved its right to void the Policy for material misrepresentation on the application and asserted that Pacia Law and/or Pacia were aware of all alleged wrongful acts that gave rise to the claims prior to filing the January 25, 2008 renewal

application.  Id. at Page 10.

By letter dated May 12, 2009, Liberty informed Pacia that it was prepared to provide a defense to its insured against the Ciccones' claims, subject to a complete reservation of its rights to deny coverage and to rescind the Policy. Pltf.'s Ex. 1-12. On the same day, by separate letter, Liberty also informed Pacia that it would provide a defense to Pacia with respect to Ramos' claims, subject to the same reservation. Pltf.'s Ex. 1-14.

C.  The Settlement Agreement

According to Liberty, on April 9, 2010, Pacia informed Liberty that he intended to withdraw his request for coverage of the Pitman Claims. Complaint ¶ 26. Pacia also informed Liberty that he refused all assistance and cooperation in defense of the Pitman Claims and that he would not authorize, or consent to, any offer of settlement with regards thereto. In exchange for withdrawing his demand for coverage, Pacia sought Liberty's agreement to cover the claims by Ramos and the Ciccones and to refrain from seeking (a) rescission of the Policy based on misrepresentation in the Policy application; (b) reimbursement of costs and fees for defense of all claims upon rescission of the Policy; and (c) indemnification and contribution from Pacia personally for any amounts paid to the Pitman Plaintiffs.

On June 18, 2010, while the underlying malpractice claims against Pacia were pending in state court, Liberty, Pacia Law and

Pacia executed a settlement agreement (the "Settlement Agreement"), pursuant to which Liberty agreed to provide coverage under the Policy for the Ramos and the 2009 Ciccone claim and to conduct a prompt investigation of a 2010 Ciccone claim to determine whether coverage applied as well. Pltf.'s Ex. 1-6 at 3. On his part, Pacia agreed that the Pitman claims were not covered under the Policy and that, even if they were, Pacia waived coverage therefor. Id. at 3. Liberty also agreed not to seek rescission of the Policy with respect to claims known at that time. With respect to additional claims not identified in the Settlement Agreement, Liberty reserved its right to deny coverge and to seek rescission of the Policy for any reason, including material misrepresentation as to any Pitman Claims on the Policy application. Id.

On July 29, 2010, D.J. Mindick filed a motion for summary judgment in state court to establish negligence and damages in the malpractice claim against Pacia. That motion remains pending. On December 17, 2010, D.J. Mindick filed a motion in the state court action pursuant to R.I. Gen. Laws § 27-7-2.4,[6] to substitute

---

[6]

R.I. Gen. Laws § 27-7-2.4 **Direct action against insurer upon filing for bankruptcy** provides:

Any person, having a claim because of damages of any kind caused by the tort of any other person, may file a complaint directly against the liability insurer of the alleged tortfeasor seeking compensation by way of a judgment for money damages whenever the alleged tortfeasor files for bankruptcy, involving a chapter 7 liquidation, a chapter 11 reorganization for the benefit of creditors or a chapter 13 wage earner plan, provided that the complaining party shall not recover an amount in excess of the

10

Liberty as a direct defendant for Pacia who had since been forced into Chapter 7 personal bankruptcy. Liberty objected, in part because D.J. Mindick had failed to obtain relief from the automatic stay, and because Pacia had not filed for bankruptcy protection voluntarily. The state court denied D.J. Mindick's motion on March 2, 2011. D.J. Mindick then obtained relief from the automatic stay and re-filed the motion on May 12, 2011. This motion also remains pending. The following day, on May 13, 2011, Liberty filed its declaratory judgment action in this Court.

D. The Declaratory Action

In its declaratory action, Liberty asserts that "Pacia Law's voluntary withdrawal of coverage for the Pitman claims through the Settlement Agreement removes any obligation by Liberty to provide defense for the Pitman claims." Complaint ¶ 36. Liberty also notes that the Policy requires Pacia Law's consent to settle any case and its assistance and cooperation in defense of any claim for which Pacia Law seeks coverage. Id. at ¶¶ 37, 38. Liberty concludes that "in the absence of consent, assistance and cooperation," Liberty has no obligation to defend or indemnify Pacia for the Pitman Claims. Id. at ¶ 39. Liberty seeks a judgment (a) declaring that it has no defense or indemnity obligations with respect to the Pitman Claims, (b) enforcing the

insurance coverage available for the tort complained of.

11

Settlement Agreement, and (c) awarding Liberty legal fees and costs in pursuing this declaratory action.  <u>Id.</u> at 7.

## II.  Standard of Review

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a party may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Court, when deciding a motion to dismiss, must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor."  <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).  In order to survive a motion to dismiss, the pleadings, when so viewed, must allege "'a plausible entitlement to relief.'"  <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).  However, the Court is not required to consider "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."  <u>Aulson v. Blanchard</u>, 83 F.3d at 3.  <u>See</u> <u>Ashcroft v. Iqbal</u>, -U.S.-, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III.  Discussion

### A.    The Motion to Dismiss the Declaratory Action

D.J. Mindick alleges that Liberty's diversity action is "an impermissible attempt to bifurcate legal malpractice

12

claims covered under the same policy, by filing for Declaratory Judgement as to certain claims while selectively leaving other claims for hearing in the state court system, which are all subject to the same insurance coverage limits." D.J. Mindick's Mem. Page 2 of 8. D.J. Mindick notes that its motion to substitute Liberty as a party defendant is currently pending in the underlying state court action which D.J. Mindick has brought against Pacia and Pacia Law regarding the Pitman Property. Id. at Page 4 of 8. D.J. Mindick points out that Liberty has had ample opportunity to file a declaratory judgment action in state court and that any determinations regarding coverage are equally available to Liberty in the underlying legal malpractice action in state court. Moreover, extensive discovery has already been conducted by defense counsel selected by Liberty in the state action.[7] D.J. Mindick also asserts that the state court would be the more appropriate forum to address whether Liberty and Pacia/Pacia law could agree to selectively withdraw coverage as to certain malpractice claims and for the insured to withhold his assistance and cooperation with the insurer with respect to those claims.

B. Liberty's Position

Liberty asserts that its claims for declaratory relief "will

---

[7]
According to D.J. Mindick, insurance defense counsel was permitted to withdraw on April 14, 2010 and all ongoing discovery in the state court proceedings was stayed until June 13, 2010. Obj. Page 3 of 8.

not, and cannot, be adjudicated in the underlying state court proceeding." Obj. 1. Liberty states that it is not a party to the state court action and it suggests that "this Court's immediate guidance on Liberty's coverage obligations will resolve the Mindick Parties' pursuit of coverage for their malpractice claim." Id. Liberty also points out that "it does not have any interest in the Underlying Action because Pacia has withdrawn the request for coverage and has specifically agreed that the claims in the Underlying Action are not covered." Id. at 8. As Liberty acknowledges, its objection to D.J. Mindick's motion to substitute is specifically based on the asserted lack of coverage as a result of Pacia's waiver. Id. Further, Liberty maintains that the underlying action provides no parallel proceeding for Liberty to litigate the coverage issues it seeks to have resolved in this case. Finally, Liberty submits that "the determination whether Liberty's Settlement Agreement with Pacia is enforceable presents a simple question of contract law" and is not "novel, unsettled, difficult or otherwise problematic." Id. at 10.

      C.  Abstention Analysis

      The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (a). It is well established that a district court's decision of whether or not to exercise jurisdiction is subject to the court's broad discretion.

<u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 115 S.Ct 2137, 132 L.Ed.2d 214 (1995)(holding that district courts' decisions about the propriety of hearing declaratory judgment actions is discretionary); <u>Lichoulas v. City of Lowell</u>, 555 F.3d 10, 13 n.3 (1st Cir. 2009) (listing cases)("In general, declaratory and injunctive relief are both matters of judicial discretion); <u>Hartford Fire Ins. Co. v. Gilbane Bldg. Co.</u>, 2011 WL 2457638 (D.R.I. Jul. 16, 2011)(noting that a court has "no compulsion" to exercise jurisdiction in a declaratory judgment action)(citation omitted).

As this Court recently noted, there is "no exclusive set of factors [which] guides a court's exercise of discretion." <u>Hartford Fire Ins. Co. v. Gilbane Bldg. Co.</u>, 2011 WL 2457638 at *2. However, the court "should consider 'the scope of the pending state court proceeding and the nature of defenses open there." <u>Id.</u> (quoting <u>Wilton</u>, 515 U.S. at 283). The question of whether declaratory relief is appropriate in a particular case "will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." <u>Id.</u> (quoting <u>Wilton</u>, 515 U.S. at 287 (quoting <u>Pub. Serv. Comm'n of Utah v. Wycoff Co. Inc.</u>, 344 U.S. 237, 243 (1952))).

To determine whether abstention under <u>Wilton</u> is appropriate, this Court has, in the past, employed the following five factors:

(1) whether the same parties are involved in both cases;
(2) whether the claims made in the declaratory judgment
action can be adjudicated in the state court action; (3)
whether resolution of the declaratory judgment action
turns on factual questions that will be litigated in the
state court action; (4) whether the issues presented are
governed by state or federal law; and (5) what effect the
declaratory judgment action is likely to have on
potential conflicts of interest between the insurer and
the insured.

Hartford Fire Ins. Co. v. Gilbane Bldg. Co., 2011 WL 2457638 at *2
n. 2 (listing cases).

    D.  This Case

    In its objection to D.J. Mindick's request for
abstention, Liberty relies, in great part, on the recent case of
Hartford Fire Ins. Co. v. Gilbane Bldg. Co., 2011 WL 2457638
(D.R.I. Jul. 16, 2011), in which this Court denied the defendant's
request for abstention on a declaratory judgment action by its
insurer.  In that case, The Hartford Fire Insurance Company ("The
Hartford") filed a declaratory judgment action requesting a
determination whether it had a duty to defend and indemnify Gilbane
Building Company ("Gilbane") in an underlying state court action.
Gilbane, which had served as general contractor on a building
project, had subcontracted some of the work to Arden Engineering
Constructors, LLC ("Arden") which, in turn, had subcontracted some
of the work to Unique Sheet Metal, Inc. ("Unique").  Arden was
covered by a general liability insurance policy issued by The
Hartford.  When a Unique employee was injured while working on the

16

project, he filed a negligence claim against Gilbane in state court.  In response, Gilbane filed a third party complaint against, *inter alia*, Arden and Unique, claiming that the employee's injuries were the result of negligence of the subcontractors and/or that the subcontractors were contractually obligated to indemnify Gilbane against the injured employee's claims.  The Hartford filed a declaratory action in this Court and Gilbane sought to dismiss that action or to have the case stayed until the underlying state court tort action had been resolved.  The question before this Court was whether, under the terms of Arden's insurance policy, The Hartford had a duty to defend and indemnify Gilbane in a tort proceeding in which the plaintiff alleged that Gilbane was solely negligent.

As Liberty correctly points out, this Court concluded that the state court proceeding involved issues that were separate and distinct from the questions presented in the declaratory judgment action. The insurer was not a party in the pending state court proceeding, although it remained an interested party as a result of having issued the insurance policy to Arden.  As this Court specifically noted, Rhode Island law <u>prohibits</u> an injured party from joining an insurer as a defendant.  <u>Hartford Fire Ins. Co. v. Gilbane Bldg. Co.</u>, 2011 WL 2457638 at *2 n.3 (citing R. I. Gen. Laws § 27-7-2.[8])

---

[8]

R.I. Gen. Laws § 27-7-2, titled Remedies of injured party against insurer, provides, in pertinent part, that "[a]n injured party . . . shall not join the insurer as a defendant."

17

The Court concluded that the underlying state court action involved determinations of negligence and contractual obligations under trade agreements, whereas the issue before this Court was a contract question involving insurance coverage. This Court further concluded that, although state law was implicated in the insurance coverage question, it was "not the kind of 'novel, unsettled, difficult, complex, or otherwise problematic' issue that would weigh in favor of abstention." Hartford Fire Ins. Co. v. Gilbane Bldg. Co., 2011 WL 2457638 at *3 (quoting Standard Fire Ins. Co. v. Gordon, 376 F. Supp.2d 218, 231 (D.R.I. 2005)). Noting that "[a] decision by this Court on the coverage question could benefit the parties by establishing contours of their various ongoing obligation to one another in the underlying tort action," the Court denied Gilbane's request for abstention. Hartford Fire Ins. Co. v. Gilbane Bldg. Co., 2011 WL 2457638 at *3.

After a thorough review of the pleadings, which Liberty has supported with extensive documentation, and in consideration of all the arguments raised by the parties, this Court is of the opinion that the instant case, both with regard to its procedural posture and the underlying substantive issues, is sufficiently distinguishable from Hartford Fire Ins. Co. v. Gilbane Bldg. Co. to warrant an exercise of this Court's discretion to abstain from deciding the declaratory judgment action.

It is true that Liberty, like The Hartford, is not now a party

18

to the underlying state court action. However, The Hartford, as this Court specifically pointed out, was precluded by Rhode Island law from becoming a party to the state court proceeding. See R.I. Gen. Laws § 27-7-2. In the state court proceeding underlying the instant case, the plaintiffs have sought to substitute Liberty as a defendant pursuant to R.I. Gen. Laws § 27-7.2.4. Whether Liberty can be substituted under that section in light of Pacia's involuntary bankruptcy is a question that was already pending in the state court before Liberty filed this declaratory judgment action. Therefore, it has not been established that Liberty will not be able to address its concerns in state court. Likewise, Liberty's assertion that it has no further interest in the underlying litigation based on Pacia's waiver of coverage, first requires a determination that its contractual agreement with Pacia to provide coverage with respect to certain, but not other potential claimants, will be upheld.

It is also true that the underlying state court action seeks a determination regarding Pacia's alleged legal malpractice, whereas here, Liberty seeks a determination regarding coverage. However, in addition to requesting a declaration that Liberty has no duty to defend or indemnify Pacia regarding the Pitman Claims, Liberty also seeks enforcement of the Settlement Agreement, which would preclude D.J. Mindick from obtaining coverage for its alleged losses and may, according to Liberty, preclude D.J. Mindick from

substituting Liberty as a party defendant in the pending state court proceeding.  Similarly, as grounds for its conclusion that no coverage is afforded under the Policy regarding the Pitman claims, Liberty relies on Pacia's voluntary waiver of such coverage and his stated refusal to assist or cooperate in his defense.

From a review of the supported documentation, it is apparent that Liberty, after initially providing a defense to Pacia, subject to a reservation of rights, with respect to <u>all</u> his known claimants, struck a deal with its insured to the potential detriment of those claimants who are now purportedly excluded from <u>any</u> coverage by the Settlement Agreement.  Whether an insured can choose to elect, after the fact, to waive coverage with respect to certain claimants, either contractually or by deliberately breaching conditions of coverage in the Policy, such as refusing to cooperate, clearly implicates state law.

This Court has found no Rhode Island case which has confronted the question of whether an insured can waive, by post-occurrence settlement with the insurer, coverage for injured third parties.  Other courts have determined that "a settlement and release between an insured and his liability insurer is ineffective as against a third party who establishes that he is an intended third-party beneficiary of the insurance contract prior to his obtaining a judgment against the insured."  <u>Cowley v. Texas Snubbing Control, Inc</u>., 812 F.Supp. 1437, 1453 (S.D. Miss. 1992); <u>Key Life Ins. Co.</u>

of South Carolina v. Taylor, 456 S.W.2d 707 (Tex. Civ. App. 1970)(holding that release by insured did not bar claim by third-party beneficiary under blanket accident policy).

Although this Court makes no determination whether D.J. Mindick qualifies as a third-party beneficiary under the Policy, the Court notes that, under Rhode Island law, "when an insurer is faced with multiple claimants with claims that in the aggregate exceed the policy limits, the insurer has a fiduciary duty to engage in timely and meaningful settlement negotiations in a purposeful attempt to bring about settlement of as many claims as is possible, such that the insurer will thereby release its insured of as much of the insured's potential liability as is reasonably possible given the policy limits and the surrounding circumstances." DeMarco v. Travelers Ins. Co., –A.3d –, 2011 WL 2697038 (R.I. Jul. 12, 2011). This holding seems to cast doubt on the enforceability of a settlement between insurer and insured that, at the election of the insured, precludes certain potential claimants from participating in that process. In sum, this question would appear to be the kind of "novel, unsettled, difficult, complex, or otherwise problematic" issue that would weigh in favor of abstention.

With regards to the consideration what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured, it appears that Pacia Law/Pacia and Liberty seek endorsement by this Court of their

arrangement, which would, in effect, preclude coverage for certain claimants without determining the validity of their claims. Whether an insurer and its insured can thus contract to preclude claimants from litigating their coverage claims is, again, a matter best left to be addressed by the state court in which such claims are already pending.

In light of the unique circumstances of this case created by the agreement between Liberty and its insured to cover some of the asserted malpractice claims in exchange for Pacia's purported waiver of coverage for other claims, and in view of the pending state court proceeding - in which a motion to substitute Liberty as a party defendant was already pending at the time this declaratory action was filed - the Court is persuaded that abstention is appropriate in this case.

## Conclusion

For the reasons stated herein, it is appropriate for this Court to abstain. Accordingly, the defendants' motion is granted and this action is hereby dismissed without prejudice to the right of any party to reopen the case at the conclusion of the state court proceeding.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
September 29, 2011